FREDERICK J. SULLIVAN AND A-1 INSURANCE
AGENCY, INC. v. INSURANCE COMMISSIONER
OF THE STATE OF MARYLAND AND AETNA
CASUALTY & SURETY COMPANY

[No. 103, September Term, 1980.]

*Decided September 16, 1981.*

The cause was argued before MURPHY, C. J., and SMITH, DIGGES, ELDRIDGE, COLE, DAVIDSON and RODOWSKY, JJ.

*Joseph A. Schwartz, III,* with whom were *Brocato & Schwartz* on the brief, for appellants.

*Nora Winay,* with whom were *Thomas Waxter, Jr.* and *Semmes, Bowen & Semmes* on the brief, for appellee Aetna Casualty & Surety Company. *Michael L. Cohen, Assistant Attorney General,* with whom were *Stephen H. Sachs, Attorney General,* and *Alan B. Lipson, Assistant Attorney General,* on the brief, for appellee Insurance Commissioner.

RODOWSKY, J., delivered the opinion of the Court.

This case presents an aspect of the problem of court reporter delay in appellate record transmittal which was not involved in *Uhler v. Real Properties, Inc.,* 289 Md. 7, 21 n.11, 421 A.2d 966, 974 n.11 (1980). There we dealt with a dismissal by the Court of Special Appeals. Here the appellants' order for appeal to the intermediate appellate court was stricken by the trial court acting under the recited authority of Md. Rule 1013. We shall hold that the order of the trial court was void under the circumstances of this case.

Appellants Frederick J. Sullivan and A-1 Insurance Agency, Inc. (Sullivan) sought review in the Baltimore City Court of an order of the Insurance Commissioner of Maryland (Commissioner), one of the appellees here. The administrative proceeding had involved the termination of

Sullivan's agency agreement with Aetna Casualty & Surety Company (Aetna), the other appellee in this Court. When the Baltimore City Court affirmed the Commissioner, Sullivan, on May 8, 1980, timely noted an order for appeal to the Court of Special Appeals. The basic period of 60 days for transmitting the record on appeal is measured from that date in this case. Rule 1025 a. On May 15, and in compliance with Rule 1026 a 2, Sullivan ordered the transcript from the court reporter. By letter dated May 26, the court reporter advised Sullivan's counsel that the transcript "will not be available until October of 1980, due to the heavy appeal work load that preceded your request." Sullivan's counsel wrote on May 28 to the Clerk of the Baltimore City Court, with copy to the Commissioner's attorney, related the statement of the court reporter, and requested that his letter be placed in the court file because "the delay in obtaining a transcript will obviously impede the timing of the appeal." The 60th day was July 7. When the Clerk of the Baltimore City Court advised Sullivan's attorney on July 25 that no motion for extension of time for transmittal of the record had been filed with the Court of Special Appeals, counsel transmitted a motion for extension to the intermediate appellate court which was received there July 28. It represented that the transcript could not be available until October of 1980 and included the May 26 letter from the court reporter as an exhibit. This motion was denied on August 5, 1980 with the notation on the margin that it was "[n]ot timely. Md. Rule 1025 b." [1] The five day period for any

---

**1.** Rule 1025 b provides:

*b. Court of Special Appeals May Shorten or Extend Time.*

Upon application of any party and for sufficient cause shown, or upon its own motion, this Court may direct that the record be transmitted within such shorter or longer period of time as may be ordered. Any application for extension of time to file the record shall be made by filing such application with the clerk of this Court within the period of time for filing the record as prescribed by section a of this Rule or as extended by this Court pursuant to this section. No order extending the time for filing the record may be entered if the application is made after the prescribed time for transmitting the record has expired unless it be shown that the failure to transmit the record was occasioned by the neglect, omission or inability of a judge of this Court, the clerk of the lower court, the court stenographer or the appellee.

answer to the motion had expired, under Rule 1055 b, on August 4 and no opposition to the motion had been filed.[2] The Clerk of the Court of Special Appeals, by letter of August 6 to Sullivan's counsel, advised that the motion was denied "as untimely filed. Maryland Rule 1025 b."

A copy of the August 6 letter was also sent to the Clerk of the Baltimore City Court and thereby precipitated the "wrinkle" on *Uhler* presented in this case. On August 14, 1980 the Baltimore City Court signed and filed an order that Sullivan's entry of appeal be stricken. We are advised by counsel for the parties that this order was prepared and submitted by the Clerk of the Baltimore City Court. The order recites that the motion for extension of time had been denied by the Court of Special Appeals as "being untimely filed in Contravention of Maryland Rule 1025 b . . . ." There is not a suggestion in the record of any notice to Sullivan that this order was to be presented to the court.

Meanwhile, Sullivan, following receipt of the August 6 letter, prepared a petition for a writ of certiorari to review the August 5 order of the Court of Special Appeals. The petition was filed in this Court on August 15, 1980, one day after the dismissal order by the Baltimore City Court. When Sullivan received a copy of the August 14 Baltimore City Court order, he transmitted a copy of it to the Clerk of this Court as a supplementary exhibit to the petition for certiorari. No appeal was noted by Sullivan from the August 14 order of the Baltimore City Court.

We granted Sullivan's petition. By an amended order we clarified that review under the writ did not embrace the underlying merits of the controversy between the parties but was limited to the procedural issues, which were stated in the amended order pursuant to Rule 813. They were:

> 1. In the light of *Uhler v. Real Properties, Inc.* . . . did the Court of Special Appeals err in denying

---

**2.** Sullivan's certificate of service on his motion reflects that it was mailed only to the Commissioner's counsel and not to counsel for Aetna. However, at oral argument, appellees acknowledged that they had no reason to believe that the representations of Sullivan's motion were not true.

Petitioners' Motion for Extension of Time to Transmit the Record?

2. Did the Baltimore City Court have power pursuant to Rule 1013 to dismiss Petitioners' appeal to the Court of Special Appeals under the circumstances of this case?

3. If the Baltimore City Court had the power, pursuant to Rule 1013, to dismiss Petitioners' appeal to the Court of Special Appeals, did the Baltimore City Court err in so exercising that power under the circumstances of this case?

4. Is the dismissal of Petitioners' appeal to the Court of Special Appeals by the Baltimore City Court subject to appellate review in the absence of a timely order for appeal from the order of dismissal?

However, appellees, at oral argument, went directly to the jugular and questioned whether this Court has any jurisdiction. They contend that, because the Baltimore City Court struck out Sullivan's order for appeal prior to the filing of his petition for certiorari, there was not "any case or proceeding pending in or decided by the Court of Special Appeals upon appeal from a circuit court" within the meaning of Md. Code (1974, 1980 Repl. Vol.), § 12-201 of the Courts Article, and consequently there was no case as to which this Court was authorized by statute to grant certiorari. We shall assume, *arguendo,* that § 12-201 is properly to be construed as appellees contend. However, a court has jurisdiction to determine the issue of its own jurisdiction to proceed. *Messall v. Merlands Club, Inc.,* 244 Md. 18, 36, 222 A.2d 627, 637 (1966), *cert. denied,* 386 U.S. 1009, 87 S. Ct. 1349, 18 L. Ed. 2d 435 (1967); *Stanley v. Safe Deposit and Trust Co.,* 87 Md. 450, 453-54, 40 A. 53, 54-55 (1898). Determination of this jurisdictional issue requires an examination of the effect of the Baltimore City Court's order striking Sullivan's entry of appeal.

In considering the effect of the dismissal order, we recognize that Sullivan's appeal to the Court of Special

Appeals was entered following the final judgment of the Baltimore City Court in the administrative appeal to it, and brought up to the intermediate appellate court matters reviewable under that final judgment. Because no further order for appeal was filed by Sullivan from the dismissal entered after Sullivan's order for appeal from the final judgment, the merits of the dismissal were not before the Court of Special Appeals and were not brought before this Court by certiorari. We shall therefore assume, most favorably to appellees, that our consideration of the effectiveness of the dismissal order, which we make in conjunction with determining our own jurisdiction to review by certiorari a case "pending" in the Court of Special Appeals, arises out of a collateral, as opposed to a direct, attack on the dismissal order. See *Fisher v. DeMarr,* 226 Md. 509, 514-15, 174 A.2d 345, 348 (1961). For the order striking Sullivan's notice of appeal to be disregarded on collateral attack, that order must be a nullity. *Board of Medical Examiners v. Steward,* 207 Md. 108, 112, 113 A.2d 426, 427 (1955); *Fooks' Executors v. Ghingher,* 172 Md. 612, 192 A. 782, *cert. denied,* 302 U.S. 726, 58 S. Ct. 47, 82 L. Ed. 561 (1937). *Cf. Thomas v. Hardisty,* 217 Md. 523, 536, 143 A.2d 618, 625 (1958) (action to have deed vacated — decree of foreclosure upon which deed issued declared void and subject to collateral attack).

Sullivan argues that the Baltimore City Court did not have the power to dismiss his appeal. He asserts that once an order for appeal is filed the jurisdiction of the trial court ends. Appellees point to Rule 1013 as the source of the trial court's power. The present form of Rule 1013, as last amended effective July 1, 1968, reads (italics denote 1968 additions; brackets denote 1968 deletions):

> Rule 1013. When Lower Court May Strike [Out] *Order For* Appeal.
>
> If *the order for appeal has not been timely filed or if* the clerk of the lower court has prepared the record as required by Rule 1026 (Record on Appeal) and the appellant has neglected or omitted to pay for such record, *or has failed to deposit with the*

> *clerk of the lower court the filing fee as required by section d of Rule 1011 (How Appeal to Be Taken),* or by reason of any other neglect or omission on the part of the appellant, the record has not been transmitted to this Court within the time prescribed pursuant to Rule 1025 (Record — Time for Transmitting), the lower court may[,] *sua sponte or upon* [on] motion, strike [out] the order for appeal and take all proceedings as if such order for appeal had not been filed.

The 1968 changes in Rule 1013 were recommended in the Thirty-second Report, dated June 21, 1968, of the Standing Committee on Rules of Practice and Procedure. Pursuant to that report, former Rule 813, which applied to this Court, was also amended effective July 1, 1968 in the same manner as Rule 1013. The explanatory note of the Rules Committee to these recommended amendments is found following Rule 813 in the Report. In relevant part the note reads as follows:

> The proposed amendment authorizes the lower court to strike an appeal which has not been timely taken and where the appellant has failed to deposit with the clerk of the lower court the filing fee required . . . . As to the former, the Committee was of the view that the lower court had the power to do so but the failure of Rule 813 to specifically so provide created some doubt as to the appropriateness of such action. The proposed amendment removes the existence of any doubt as to the right of the lower court to do so.

However, it is not necessary for us to decide in this case whether the order for appeal ousted the trial court of "fundamental jurisdiction," *see Pulley v. State,* 287 Md. 406, 416-17, 412 A.2d 1244, 1249-50 (1980), or whether dismissal of an appeal under Rule 1013 is an exercise of fundamental jurisdiction by a circuit court. This is because the August 14, 1980 order of the trial court in this case is void and subject to collateral attack on due process grounds. It was passed

without any notice whatsoever. The 1968 amendment which inserted "sua sponte" in Rule 1013 is not to be interpreted as generally authorizing the dismissal of an appeal without notice. Black's Law Dictionary 1277 (5th ed. 1979) defines "sua sponte" to mean "[o]f his or its own will or motion; voluntarily; without prompting or suggestion." In the context of Rule 1013 it means simply that the court may act on its own initiative, without awaiting a motion by a party, and means no more than if the rule read that the court may act "on its own motion, or on motion of a party." But the court may not act without notice under circumstances where, on motion of a party, notice would be required. There is no suggestion in the explanatory note of the Rules Committee to the 1968 amendment that the insertion of "sua sponte" was intended to have the trial court initiated procedure exclude notice while retaining the element of notice which is implicit in the filing of a motion by a party.

It is also clear that the order striking the entry of appeal was a judgment. It is an appealable order. *See State Roads Commission v. Maryland Materials, Inc.,* 237 Md. 621, 205 A.2d 796 (1965); *Meloy v. Squires,* 42 Md. 378 (1875); *O'Hern v. Browning,* 33 Md. 471 (1871); *Baltimore County v. Stitzel,* 26 Md. App. 175, 188, 337 A.2d 721, 728-29, *cert. denied,* 275 Md. 745 (1975); *In re Sorrell,* 20 Md. App. 179, 315 A.2d 110, *cert. denied,* 271 Md. 740, 744 (1974).

More fundamentally, the right of appeal "is a valuable right secured to parties, where they are vigilant, and not to be forfeited, unless where they are guilty of such *laches* as the law will not sanction." *O'Hern v. Browning, supra,* 33 Md. at 475. The Baltimore City Court had "no authority to disallow or strike out an appeal except under the provisions of" Rule 1013. *Price v. Warden,* 212 Md. 661, 663, 129 A.2d 120, 121 (1957). Under Rule 1013 the order for appeal may be stricken for failure timely to transmit the record when that failure is "by reason of . . . neglect or omission on the part of the appellant. . . ." The August 14, 1980 order in essence adjudicated that the failure timely to transmit the record was by reason of Sullivan's neglect or omission. That

adjudication was entered without notice to Sullivan or opportunity for Sullivan to demonstrate that the delay was due to the court reporter. A delay so caused is excused under Rule 1025. *Uhler v. Real Properties, Inc., supra.* Rule 1025 is incorporated into Rule 1013.

"A judgment is void unless a reasonable method of notification is employed and a reasonable opportunity to be heard afforded to persons affected." Restatement of Judgments § 6 (1942). We have applied this principle in a collateral attack on particular proceedings taken in an action in which the court had both jurisdiction over the subject matter and over the person of the defendant. In *Travelers Indemnity Co. v. Nationwide Construction Corp.,* 244 Md. 401, 224 A.2d 285 (1966) the defendants were served with a complaint for possession of real estate which also alleged that they owed the plaintiff $5,300 for occupancy of the premises. The prayer for relief did not include a demand for money judgment but asked only for repossession of the property. When the defendants failed to appear for trial at the appointed time judgment was entered for possession and for the $5,300. An appeal was noted and an appeal bond posted. Before the appeal was determined, the defendants relinquished possession of the premises and dismissed their appeal. In a separate action the plaintiff sued the bonding company for $5,300 under the penalty of the bond. We said that the $5,300 judgment was invalid and subject to collateral attack. "[T]he fundamentals of fairness are requisite to the validity of an adversary proceeding in any tribunal" and "[a] basic requirement of fairness is that the defendant be given notice of and an adequate opportunity to defend against the claim on which the judgment is based." *Id.* at 406, 224 A.2d at 288. There was a violation of a basic, constitutional right. Recognizing that the "violation of a constitutional right may make the proceedings in which the violation took place either voidable or void," we said, citing *Schowgurow v. State,* 240 Md. 121, 134, 213 A.2d 475, 484 (1965) that the violation in that case "went to the fairness of the conduct of the trial and accordingly the money judgment obtained in violation of that right was invalid." *Travelers,*

*supra,* 244 Md. at 410, 224 A.2d at 290. However, because the appeal bond had effected a stay of repossession, it was held that the bonding company was estopped to assert the invalidity of the judgment. *Id.* at 416-17, 224 A.2d at 294.

Of similar import is *Griffin v. Griffin,* 327 U.S. 220, 66 S. Ct. 556, 90 L. Ed. 635 (1946). There the wife had been granted a divorce and, in 1926, alimony in an action in New York in which the husband appeared and which he contested. In 1936 the wife obtained a further order in the divorce action determining the amount of alimony arrearages, as a result of a proceeding in which the husband appeared and made contest. Then, in 1938, pursuant to a practice prevailing in New York, the wife moved without notice to the husband for a judgment in the amount of additional arrearages which had accrued since the 1936 determination. When the wife sued in the District of Columbia for the amounts claimed to be due under the 1936 and 1938 New York orders, the Supreme Court held that the 1938 New York judgment was not entitled to full faith and credit. The Court stated (*id.* at 228, 66 S. Ct. at 560, 90 L. Ed. at 640):

> Concededly the 1938 judgment was entered without actual notice to or appearance by petitioner, and without any form of service of process calculated to give him notice of the proceedings . . . . Because of the omission, and to the extent that petitioner was thus deprived of an opportunity to raise defenses otherwise open to him under the law of New York against the docketing of judgment for accrued alimony, there was a want of judicial due process, and hence want of that jurisdiction over the person of petitioner prerequisite to the rendition of a judgment *in personam* against him.

Nor did the fact that the New York Civil Practice Act provided for the procedure utilized by the wife in *Griffin* satisfy due process. The Court held (*id.* at 229, 66 S. Ct. at 561, 90 L. Ed. at 640):

> While it is undoubtedly true that the 1926 decree, taken with the New York practice on the subject,

gave petitioner notice at the time of its entry that further proceedings might be taken to docket in judgment form the obligation to pay installments accruing under the decree, we find in this no ground for saying that due process does not require further notice of the time and place of such further proceedings, inasmuch as they undertook substantially to affect his rights in ways in which the 1926 decree did not. [Footnote omitted.]

*Accord, Chapman v. Chapman,* 284 App. Div. 504, 132 N.Y.S.2d 707, *appeal denied,* 284 App. Div. 857, 134 N.Y.S.2d 173 (1954), *motion denied,* 285 App. Div. 991, 138 N.Y.S.2d 709 (1955) (a Vermont judgment for lump sum alimony is void when it was entered on an amendment, of which the defendant had no notice, to a complaint which also altered the claim from one for partial to one for absolute divorce).

In *Glading v. Furman,* 282 Md. 200, 383 A.2d 398 (1978) the doctrine of continuing jurisdiction was applied to a petition for child support arising out of a divorce action. We saw no unfairness to the defendant "since he must receive reasonable notice and be afforded an opportunity to be heard at each new step in the case" and we said, citing *Griffin, supra,* that "[f]ailure to provide such notice and opportunity would likely result in a denial of due process." *Id.* at 204-05, 383 A.2d at 401.

In this case the trial court undertook completely to dismiss the appeal and thereby to terminate the litigation entirely. By the terms of Rule 1013 under which the Baltimore City Court acted, an order for appeal may be stricken because of a failure timely to transmit the record where the delay is by reason of "neglect or omission on the part of the appellant." Without notice or affording Sullivan the opportunity to be heard, the Baltimore City Court decided, in effect, that the delay in transmittal was the fault of Sullivan and was not due to the court reporter. The fundamental fairness of the proceeding was affected. This is a denial of due process which voids the order striking the entry of appeal. Inasmuch as the

dismissal is a nullity, we may treat it as such in the matter before us. Accordingly, Sullivan's appeal was pending in the Court of Special Appeals when the petition for certiorari was filed and when it was granted and this Court has jurisdiction to proceed. We turn then to the issue of whether the Court of Special Appeals erred in denying Sullivan's request for extension of time.

We shall not treat the issue as moot. Unlike the appellants in *Uhler*, Sullivan has not had the record forwarded to the Court of Special Appeals during the pendency of this appeal, although we are advised at argument that the transcript was completed in September of 1980. This is apparently a result of the invalid order of dismissal having been entered in August of 1980. Further, the problem of requests for extensions of time, made after the expiration of the prescribed time, is currently a recurring one. In addition to *Uhler* and this case, the problem has arisen in this Court in *Ayre v. State* (No. 138, September Term, 1980, decided August 31, 1981).

Rule 1025 b provides in relevant part that "[n]o order extending the time for filing the record may be entered if the application is made after the prescribed time for transmitting the record has expired *unless it be shown that the failure to transmit the record was occasioned by the* neglect, omission or *inability of* a judge of this Court, the clerk of the lower court, *the court stenographer* or the appellee." (Emphasis added). These are the same excusing conditions which appear in Rule 1025 c, dealing with dismissal, and which we considered in *Uhler*. Here Sullivan's motion asserted court reporter delay, evidenced that fact by letter from the court reporter and was not controverted. It should have been granted. *Ayre v. State, supra.*

> *Order of the Court of Special Appeals of August 5, 1980 vacated and case remanded to that court for further proceedings.*
> *Costs to abide the result.*