603 A.2d 908

**Robert VAN SCHAIK**

v.

**Sally Ann VAN SCHAIK.**

No. 613, Sept. Term, 1991.

Court of Special Appeals of Maryland.

April 2, 1992.

Michael J. Jacobs (Miles & Stockbridge, on the brief), Easton, for appellant.

Karen M. Kaludis, Easton, for appellee.

Argued before WILNER, C.J., and CATHELL and MOTZ, JJ.

CATHELL, Judge.

We shall reverse the decision of the trial court in the case *sub judice.* We explain.

Robert Van Schaik, appellant, contends on appeal that the trial court improperly appointed an attorney for a minor child under the provisions of the Family Law Article, section 1–202. He asserts the appointment was in error because the parties to this domestic issue had agreed on all issues as to custody, visitation, and support and that agreement had been filed in the proceedings prior to the court's appointment of counsel.[1] He also questions the authority of the trial court to mediate and/or decide minor property disputes brought to the attention of the court by the counsel appointed for the child.

Additionally, he raises questions as to the propriety of the proceedings themselves. He argues that the attorney appointed to represent the minor child of the parties made *ex parte* communications to the trial court. Appellant further alleges that the trial court sealed the *ex parte* reports, concealing them from him, and then relied on them in rendering its decision. Finally, he asserts that he was deprived of being a custodial parent without any notice that a change in custody was sought nor an opportunity to be

---

1. Appellant actually phrased the question in different terms. Our summary, however, states the substance of appellant's claim of reversible error on this point.

heard on that issue. He is correct with respect to each of these complaints.

## The Facts

Sally Ann Van Schaik[2] filed a Bill of Complaint on November 4, 1987, for a divorce from appellant alleging several grounds. Appellant answered generally denying the allegations of the complaint. Thereafter, a supplemental complaint was filed by him on March 9, 1990. It alleged as grounds that the parties had voluntarily separated and that he and his wife had entered into a separation and property settlement agreement. The agreement was attached to the Supplemental Bill and appellant requested that it be incorporated into any judgment of divorce. That agreement, dated January 25, 1990, was signed by both parties and included an arrangement as to custody, visitation, and support of the minor child of the parties, then 12½ years old. It provided for joint legal custody of the child with the primary custodian to be the mother and provided for reasonable visitation and support.

After the agreement had been filed with the court, the trial judge "[u]pon consideration of information recently brought to the Court's attention" appointed counsel for the child. This occurred without a request from either party being reflected in the record.[3]

---

**2.** We do not identify Ms. Van Schaik as appellee because the order appealed to us was not rendered in behalf of Ms. Van Schaik nor pursuant to any pleading filed in her behalf. The appellee's brief is filed by the attorney for the minor child. Although Ms. Van Schaik is captioned "appellee," it is clear that this appeal results from actions initiated solely by the attorney for the minor child.

**3.** Neither party has directed our attention to any such request, and our examination of the record has revealed none. We note, however, that Reverend Don Bauer testified during the hearing, from which this appeal results, that: "My understanding is he [appellant] involved himself this time because I asked for a Court-appointed attorney to represent [the child] in this. . . . And that was when I got involved, or asked the Court to appoint an attorney, which you did, your Honor, and uh, I think you know about, you know, what happened there." There is no document in the record of this case of any such request

Thereafter, the child's attorney requested a hearing "with regard to visitation and other issues." The trial court then scheduled a hearing notifying the parents by notice that provided:

## HEARING ON VISITATION AND CHILD'S POSSESSIONS

has been scheduled for March 18, 1991 from 9:00 a.m. to 11 a.m.

Upon receipt of the notice, appellant's then counsel notified appellant, contacted the counsel for the child and met with appellant. As a result of these contacts, appellant and his counsel understood that the purpose of the hearing involved minor visitation and property issues. Because appellant did not seriously contest the visitation and property issues, a decision was made that appellant would not need assistance of counsel at the hearing and, accordingly, he appeared *pro se*. Ms. Van Schaik also appeared without counsel. The only attorney present was the attorney for the child. The hearing took place and at its conclusion the court terminated appellant's joint custody rights [4] and ordered, among other things, that he deliver the child's bike to Seaford, Delaware, and that he return money to the child. After rendering his decision, the trial judge directed the clerk of court to seal a report that had been made to the court by the child's attorney and thereafter refused to unseal that report. Appellant alleges, and the record supports the allegation, that the trial court relied in part on that sealed report in the rendering of its decision. It is from all of these orders that Van Schaik appeals.

---

for the appointment of counsel. Earlier, Reverend Bauer testified to the trial court "[a]s outlined in the report of the letter that I sent to you...." The record discloses no letter from Reverend Bauer to the court.

**4.** The record does not reflect that there was ever any request by a party for a change of custody. Even the child's attorney had not requested a change in custody.

May an attorney be appointed pursuant to Family Law Article section 1–202 to represent a child in a domestic case where there is no contest as to custody, visitation, or support?

The provision for the appointment of an attorney for a minor child in domestic cases was first enacted in 1976. The purpose clause of the act stated:

> For the purpose of providing for the appointment ... of attorneys for minors in *certain* domestic cases in which the issue of custody, visitation rights, or the amount of support *is contested....*

Act of May 4, 1976, ch. 250, 1976 Md.Laws 759, 759 (codified at Md.Code Ann., Cts. & Jud.Proc. § 3–604) (emphasis added). The act added a new section to the Courts and Judicial Proceedings Article, section 3–604. This section provided:

> The court, for good cause, may appoint an attorney to represent a minor in any action ... in which the issue of custody, visitation rights, or the amount of support *is contested....*

Md.Code Ann., Cts. & Jud.Proc. § 3–604 (repealed 1984) (emphasis added). The current statute is now found in section 1–202 of the Family Law Article. It provides in pertinent part:

> In an action in which custody, visitation rights, or the amount of support of a minor child *is contested*, the court may:
>
> (1) appoint to represent the minor child counsel who may not represent any party to the action....

Md.Code Ann., Fam.Law § 1–202 (1991) (emphasis added).

As we initially indicated, a Supplemental Bill of Complaint was filed by Van Schaik on March 9, 1990. It had attached thereto a "Marital Separation Agreement" dated January 25, 1990. That agreement was "to be made a part" of the Supplemental Complaint. It provided that:

> The minor child ... shall be in the joint custody of the parties, and shall have his primary residence with the

Wife.... The Husband shall have ... reasonable visitation....

The Husband shall pay to the Wife for the support and maintenance [of the child] the sum of $75.00 per week....

The agreement also contained other provisions as to the duties and obligations of the parties with respect to the child. This agreement was voluntarily entered into by the parties, each of whom was represented by separate counsel. At that time, there were no contested custody, visitation, or support issues.

■ Thereafter, the court, on March 24, 1990, stated that it was acting "[u]pon consideration of information recently brought to the court's attention" and appointed counsel to represent the child. It is clear that at the time the trial judge appointed counsel, there were no issues as to custody, visitation, or support then being contested by the parties. Those problems had been resolved to their satisfaction. It is equally clear that, pursuant to the Family Law Article, only the parents could have then qualified as "contestants." § 9–201.

■ While we do not normally review portions of the record not contained in the briefs, appendices and extract, Maryland Rule 8–501, under the unusual circumstances of this case, we have chosen to do so. Our review indicates that in a response filed on May 4, 1990, to a motion made by counsel for the child for the psychological and orthodontic evaluation of the child, appellant, by his counsel, said:

1. Robert Van Schaik has no objection to the appointment of an attorney to represent the interests of the minor child and no objection to the procuring of an independent psychological evaluation.

\*     \*     \*     \*     \*     \*

3. That the costs of the matter related to the appointment of an attorney and any other costs related to psychological evaluation should be determined by the Court after a proper hearing....

Not only did appellant not object to the initial appointment of counsel for the child; he, as we have indicated, explicitly consented. Furthermore, he consented subsequently to counsel's motion for evaluations. At oral argument before us, appellant asserted that his consent to her appointment, and her appointment, automatically terminated at the time of the granting of the divorce. We disagree. Not only does the statute contemplate that the appointment continues past the date of the divorce if conflicts as to custody, visitation, and support remain, a clear inference existed that the evaluations which were pertinent to appointment of counsel for the child (and appellant's consent) might well not be completed by the time of the granting of the divorce. That inference is supported by the decree in which the trial judge ordered that all matters relating to the status of the child would be determined "subsequent to a report and recommendations by the attorney representing the interests of the minor child...." It is clear that the evaluations could not have been contemplated to have been completed by the date of the divorce decree, *i.e.*, May 25, 1990. Thus, we hold that appellant waived his right to object to the initial appointment of counsel to represent the child and that the waiver extends to raising objections on appeal to her representation during the period of the post-decree evaluations and recommendations.[5]

We hasten to add, however, that as we view the statute it does not explicitly afford to the trial court, in the absence of contested issues, the power to appoint permanent counsel for a child under 16, absent the consent of the parties to a case.

> May the trial court order a party to pay counsel fees after the divorce has been granted, where there are no contested issues of custody, visitation rights, or amount of support?

---

5. As far as we know, appellant still has not withdrawn his consent to her appointment.

■ As we have indicated, the appellant consented to the appointment of an attorney for the minor child. At the same time he consented to the orthodontic and psychological evaluations, he also agreed that the costs of the evaluation and attorney fees "should be determined by the Court after a proper hearing...." We perceive no error in the trial court's assessment of the child's attorney's fees.

Was the trial court's involvement in the resolution of minor disputes between parent and child in regards to personal property appropriate?

■ As we read section 1–202, it authorizes counsel to be appointed to represent the interests of the child in respect to custody, visitation, and support. It does not by its terms, nor do we believe by implication, permit trial courts to appoint counsel to represent, during divorce proceedings, the interests, if any, of children with respect to other issues such as replevin, conversion, or the return of property.[6]

■ The resolution of minor property issues, at the sole request of counsel for the minor child, is not only wasteful of the court's resources, but is not, as we perceive it, consistent with the purposes of the statute which provides for the appointment of counsel for the child only in contested custody, visitation and support cases. Accordingly, we hold that the attorney appointed for the infant, pursuant to section 1–202, lacked authority under that statute to initiate a proceeding for recovery of the child's property. The court, therefore, was in error in ordering, in the proceeding initiated solely by counsel on behalf of the child, that

---

**6.** We acknowledge that the possibility of the filing of such actions for the return of a bicycle and/or $12 is remote. Issues involving property of such limited value normally do not generate lawsuits. It is, as we see it, almost impossible to believe that the General Assembly intended that attorneys appointed under this statute would file suit in respect to the location of a child's bicycle or to require the parent to give $12 to a child. The Family Law Article generally concerns itself with the disposition of the property of the husband and the wife, not the disposition of the property of the child. We note further that in the posture of this case, these issues were being litigated on behalf of the child. Neither parent had raised them.

appellant had to deliver the bicycle to Seaford and to remit to the child's attorney $12 then in possession of appellant. We note that the appointment of the child's counsel as *trustee* through which bills are to be sent and sums received for the benefit of others was, in our view, under the circumstances of this case, unnecessary, undesirable, and unwarranted. We shall, accordingly, vacate the trial court's order designating her as trustee. There is a practical limit to the extent to which the court can, and ought to be involved in relatively minute matters in domestic cases. The limit, as we see it, does not extend to appointing an attorney representing a child as some sort of conduit through which the bills and payments of the parents are to be funnelled.

Were the ex parte communications by counsel<br>for the minor child appropriate?

The child's counsel, in her report to the trial judge, stated that her "concern is that [the child] will suffer the consequences from his father if this report is sent to him." In her brief before this Court, she twice declines to quote certain sections of her report "in order to protect the Child." Presumably, it was those portions she now refers to that caused her to request confidentiality in the trial court. Because we believe that the granting of confidentiality and the sealing of the records was improper in the first instance, we shall now address those sections, noting as we do that nowhere in anyone's report are there any allegations of any sexual, physical, or serious mental abuses of the minor child by either parent.

One section that the child's counsel referred to as necessitating concealment from the parents was a sentence from the report of Dr. Boen where he referred to a problem that had occurred when the child was ten or younger: "During these rages [the child] would not only be out of control but would sometimes say he wanted to kill himself." We fail to see why such information should be concealed from the child's parents. Conversely, in our view, a person conceal-

ing such information does so at some risk. While the holding of the Court of Appeals in *Eisel v. Board of Education*, 324 Md. 376, 597 A.2d 447 (1991), was grounded in a statute and school board policy, it recognized the possibility of notification duties running to parents when adolescents are known to be contemplating suicide.

Even without the Court of Appeals decision in *Eisel*, we could not sanction under the facts of this case a decision by a child's attorney to conceal from the parents the fact that their child has contemplated, or may be contemplating suicide. Dr. Boen, the only qualified professional involved, recommended that his report be furnished the parents saying: "I suggest copies of this report be provided to ... the parents." Counsel for the child nevertheless chose to suggest to the trial court that this information be kept confidential, "until" the trial court deemed "the parties should have access to it."

The other section referred to us as not being quoted "in order to protect the Child" is contained on page 2 of Reverend Bauer's report.[7] We do not perceive that this type of information should be concealed from parties who have a right to contest it.

In *Denningham v. Denningham*, 49 Md.App. 328, 335, 431 A.2d 755 (1981), *cert. denied*, 291 Md. 773 (1981), *cert. denied*, 455 U.S. 990, 102 S.Ct. 1614, 71 L.Ed.2d 849 (1982), we declined to address several issues, but "[t]he one exception is appellant's assertion that he was denied due process of law when the [trial] court considered the ... report in making its custody determination ... after it had refused to permit him to see the report." Judge Wilner,

---

7. As far as the record reflects, Reverend Bauer was never qualified as any type of expert. To what extent he may have training in relevant areas cannot be discerned. He apparently has a Master's of Divinity degree and is of the Christian faith. He operates a counseling service. Additionally, he presumably feels free to initiate *ex parte* communications with this trial judge. The record does not reflect any solicitation of those communications by the trial judge.

now Chief Judge, concluded that the trial court had erred. He said:

> [T]hese reports consist largely of hearsay declarations—often double- or triple-level hearsay—as well as opinions of various social workers, medical or paramedical personnel, psychologists, teachers, and the like, which may or may not have a reasonable basis. Statements contained in a custody investigation report have no special indicia of reliability. They are generally not under oath and often emanate from people having overt or covert bias. In many instances, the statements represent subjective feelings and perceptions rather than objective observations or empiric data. Their usefulness to the court is only as strong as their reliability, and that requires that they be subject to challenge in essentially the same manner as any other critical evidence.

*Denningham,* 49 Md.App. at 335–36, 431 A.2d 755. We held:

> "Due process" encompasses that principle and requires that if a court bases its custody decision, even in part, on an independent report, the parties—or their attorneys—must be given the opportunity to examine the report and must be allowed the opportunity to cross-examine the investigator and to produce outside witnesses to establish any inaccuracies the report may contain. However sensitive the material may be, a party has a right to know what evidence is being considered by the court in judging his cause. A custody case can no more be tried and decided upon secret *ex parte* evidence than any other proceeding.

*Id.* at 337, 431 A.2d 755. See *Cornwell v. Cornwell,* 244 Md. 674, 678, 224 A.2d 870 (1966), where that Court opined: "The report ... should have been in writing and have been available to counsel for both parties prior to the chancellor's decision." And see also the Court of Appeals recent case of *Ungar v. Handelsman,* 325 Md. 135, 599 A.2d 1159 (1992), where the trial court acted on information from a source unknown to either party. The Court said:

The trial judge's error was in acting upon information brought to his attention from an undisclosed source, without first having disclosed that information to the parties and permitting a reasonable opportunity for investigation and response.

*Id.* at 140, 599 A.2d 1159.

As far as can be discerned, the trial court in the case at bar based its findings solely on the report. To the extent the court was presented with the testimonial evidence of Reverend Bauer, that testimony related to the report withheld from the parties by the court. Appellant did not have the opportunity to cross-examine Reverend Bauer about the accuracy of his report because the report had been withheld. Additionally, the record does not reflect that the child was interviewed by the trial court or that any other probative testimony was presented. Under the circumstances here presented, the error was not harmless.

Was sufficient notice afforded to the parties?

▆▆▆ Finally, appellant was not given proper notice that matters relating to custody were to be the subject of the hearing at issue. The notice provided only for a hearing on "visitation and child's possessions." Section 9–205 of the Family Law Article provides that:

Before making a decree under this subtitle, reasonable notice and opportunity to be heard shall be given to the contestants,[8] any parent whose parental rights have not been previously terminated, and any person who has physical custody of the child.

It is clear that if a court is contemplating holding a hearing at which it will, or may, determine custody issues, a parent with custodial rights, or one who has the right to claim custody, must be notified that such an issue may be the subject of the hearing. The notice in the case at bar did

---

8. Section 9–201 defines contestant as a person, including a parent, who claims a right of custody or visitation rights with respect to a child. Md.Code Ann., Fam.Law § 9–201 (1991).

not notify either parent that the court was contemplating making a custody decision. Neither parent had asked for a change in custody or for a custody determination. Neither parent was represented by counsel and the record reflects that, until the court made its ruling on custody at the conclusion of the hearing, neither parent was aware that the hearing was in any way concerned with the matter of custody. See *Blue Cross of Maryland, Inc. v. Franklin Square Hosp.*, 277 Md. 93, 101, 352 A.2d 798 (1976), and cases therein cited, where the Court of Appeals stated: "[U]nless ... a party otherwise receives adequate notice of an issue during the course of a proceeding, due process is denied." (Citations omitted.) In *Phillips v. Venker*, 316 Md. 212, 222, 557 A.2d 1338 (1989), the Court stated:

[I]t is axiomatic that they were entitled to adequate *notice* of the time, place, and *nature* of that hearing, so that they could adequately prepare.

Counsel for the plaintiffs was not given any meaningful opportunity to review his file, collect his thoughts, or otherwise prepare for oral argument. That he was able to participate in some fashion in the argument the trial judge insisted be held does not suggest that he was able to participate effectively. [Emphasis added. Citations omitted.]

*See also Sullivan v. Ins. Comm'r*, 291 Md. 277, 284, 434 A.2d 1024 (1981) ("[T]he court may not act without notice under circumstances where, on motion of a party, notice would be required.").

It cannot even be reasonably argued that Van Schaik had an opportunity for effective argument on the issue of custody when there was no notice at all that it would be considered nor any discussion during the hearing itself of that issue. Appellant's first notice that custody was to be determined was when he was divested of it in the court's decree at the conclusion of the hearing.

The lack of notice constituted a denial of due process and itself constituted prejudicial error.

**740**

JUDGMENT VACATED; ORDER DESIGNATING COUNSEL FOR THE CHILD AS TRUSTEE VACATED; CASE REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION; COSTS TO BE PAID 50% BY MR. VAN SCHAIK AND 50% BY MS. VAN SCHAIK.[9]

---

**9.** Various pleadings have been filed below relating to contempt proceedings and requests for the trial court to recuse itself and responses thereto. Those matters are not before us as they relate to pleadings and actions by the court that post-date the matters appealed to us. We, therefore, decline to address them in this appeal.